IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Michael Sutton,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　　Defendant. | No. CV-13-01064-TUC-JAS (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff David Sutton brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Sutton filed his opening brief. (Doc. 16.) In response, the Commissioner moved to remand the case to the ALJ. (Doc. 17.) Sutton opposes a remand for further proceedings because he contends he is entitled to an immediate award of benefits. (Doc. 18.) Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends the District Court, after its independent review, remand for benefits.

## PROCEDURAL HISTORY

Sutton filed an application for Supplemental Security Income (SSI) on January 5, 2011.[1] (Administrative Record (AR) 154.) He alleged disability from June 1, 2008. (*Id.*) Sutton's application was denied upon initial review (AR 89-92) and on reconsideration (AR 99-102). A hearing was held on March 16, 2012 (AR 33-61), after which ALJ George W. Reyes found, at Step Four, that Sutton was not disabled (AR 13-27). The Appeals Council considered additional evidence but denied Sutton's request to review the ALJ's decision. (AR 1-4.)

## FACTUAL HISTORY

Sutton was born on September 2, 1975, making him 35 years of age at the time he applied for disability. (AR 154.) Over the years, Sutton held a number of short-term jobs, including construction and landscaping, earning between two thousand and nine thousand dollars in any given year. (AR 162-68, 176.) He served time in prison in 2001, from 2002-2004 and from 2004-2008. (AR 37-39.)

The ALJ found Sutton had several severe impairments: polysubstance abuse; personality disorder, not otherwise specified; bipolar disorder, not otherwise specified; history of motor vehicle accident with comminuted fracture of the right hip with open reduction and internal fixation; and history of traumatic brain injury with associated subdural hematoma status post-surgery. (AR 15.) At Step Three, the ALJ determined that

---

[1] The record also includes an application for Disability Insurance Benefits (DIB) submitted on February 28, 2012. (AR 142-45.) Sutton's counsel asked that the DIB application be accelerated to the same level as the SSI proceeding. (AR 141.) However, the ALJ ruled on this solely as an SSI case. (AR 13.)

Sutton's impairments, including the substance abuse disorder, met two of the listed impairments. (AR 16.) However, the ALJ concluded that if Sutton stopped abusing substances, his impairments would not equal any of the listings. (AR 18.) With no substance use, the ALJ concluded Sutton could do heavy work (reachable by public transportation), limited to simple, routine tasks, with occasional interaction with supervisors and coworkers and only incidental public contact. (AR 19.) The ALJ found, at Step Four, that Sutton could do his past relevant work as a landscaper. (AR 26.) Sutton was not entitled to benefits because the ALJ determined the substance abuse was material to the disability determination, in that Sutton would not meet be disabled if he stopped using drugs.

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or

"not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

# DISCUSSION

Sutton argues the ALJ committed four errors: (1) the ALJ misinterpreted facts, thus, his opinion is not supported by substantial evidence; (2) the ALJ improperly rejected the opinion of Sutton's treating physician, Dr. Guzman; (3) the ALJ erroneously evaluated Sutton's credibility; and (4) the ALJ misinterpreted testimony of the vocational expert.

The Commissioner requests a remand for a de novo hearing and evaluation conceding that the ALJ erred in his evaluation at Step Four. The ALJ found that Sutton could perform his past relevant work as a landscaper based on the testimony of the vocational expert (AR 26); however, the vocational expert testified that a person with the RFC stated by the ALJ could not work as a landscaper (AR 57). Defendant contends that upon remand, the ALJ would conduct a new hearing and make a new determination regarding Sutton's RFC, therefore, the Court need not reach any arguments implicating the RFC.

Sutton asks for an immediate award of benefits, arguing that he is entitled to benefits at Step Three, which is decided prior to the RFC determination. Thus, the Court will first evaluate Step Three. The Court focuses solely on Sutton's claim regarding Dr. Guzman because it finds that issue dispositive of the case.

**The ALJ's Step Three Decision**

At Step Three, the ALJ found that Sutton's impairments, with substance abuse disorders, met listings 12.04 and 12.09. (AR 16.) In support of this finding the ALJ concluded that Sutton satisfied the paragraph A criteria because:

> the claimant has a medically documented persistence, either continuous or intermittent, depressive syndrome characterized by four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; or hallucinations, delusions or paranoid thinking.

(AR 16.) To satisfy the paragraph B criteria, the ALJ found Sutton's impairments, including the substance abuse disorders, caused marked restriction in activities of daily living, marked difficulties in social functioning, marked difficulties in maintaining concentration, persistence or pace, and repeated episodes of decompensation of extended duration. (*Id.*) At this stage of the analysis, the ALJ gave great weight to the opinion of Dr. Paul Guzman, Sutton's treating psychiatrist, finding that it was supported by the evidence as a whole. (*Id.*)

The ALJ then concluded that Sutton would not meet a listing if he stopped the substance abuse. Curiously, after first relying on Dr. Guzman's opinion, in this portion of the analysis the ALJ rejected it as discussed below. The ALJ stated that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (AR 18.) More specifically, the ALJ concluded that, without the substance use disorders, Sutton's impairments cause only

"moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration." (*Id.*)

**Dr. Guzman's Opinion**

On June 15, 2011, Dr. Guzman opined that Sutton had a psychotic illness, was not in touch with reality, experienced auditory hallucinations and paranoid delusions, and was on strong medications. (AR 835.) Dr. Guzman determined that Sutton had moderate limitations in carrying out simple instructions; marked limitations in understanding and remembering simple instructions, and making judgments on simple work-related decisions; and extreme limitations on understanding and remembering detailed instructions, interacting appropriately with the public, supervisors, and coworkers, and responding appropriately to work pressure or changes in work routine. (AR 834-35.) Dr. Guzman provided a supplemental document after the ALJ's decision, which was considered by the Appeals Council, stating that Sutton's RFC limitations persisted during periods of sobriety and he would have the same limitations in the absence of drugs and alcohol.[2] (AR 1523.)

Contrary to Dr. Guzman, examining psychologist Kathleen Prouty and consulting non-examining psychologist Jaine Foster-Valdez opined that, if not using substances, Sutton could perform unskilled work. (AR 349, 373.) Generally, a treating physician's

---

[2] Because this evidence was submitted to, and considered by, the Appeals Council, this Court considers it in determining whether the ALJ's denial of benefits is supported by substantial evidence. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a non-examining or reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). When there are contradictory medical opinions such as there are in this case, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence."[3] *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In considering Dr. Guzman's opinion about Sutton's limitations without substance abuse, the ALJ gave it little weight because it was "brief, conclusory, and inadequately supported by the clinical findings." (AR 24.) Significantly, Dr. Guzman provided only one opinion, to which the ALJ gave great weight regarding Sutton's limitations, but found the same opinion brief and conclusory regarding Sutton's limitations when not using drugs or alcohol. The ALJ made no effort to resolve this conflict. Instead, the ALJ supported his rejection with the rationale that Dr. Guzman failed to provide an

---

[3] When a treating physician's opinion is uncontroverted, an ALJ must provide clear and convincing reasons to disregard it. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Drs. Foster-Valdez and Campbell provided their opinions in July and November, 2009, respectively, more than a year before Sutton's relevant onset date. At this earlier date Sutton reported to Dr. Foster-Valdez that his only sustained period of sobriety to date was in prison, from which he was released in 2008. Therefore, her opinion on Sutton's functioning without substances was entirely hypothetical. Under the newly applicable SSR, there must be *evidence* that a claimant with a co-existing mental health issue would not be disabled if sober. An ALJ is not permitted "to rely exclusively on medical expertise and the nature of a claimant's mental disorder" to predict that the mental disorder would improve to the point of non-disability with abstinence. SSR 13-2p. Because neither Dr. Foster-Valdez nor Dr. Campbell examined Sutton or reviewed records during a period of abstinence their opinions don't contradict Dr. Guzman's opinion about a different period when Sutton was abstinent. Nevertheless, the ALJ did not have the benefit of SSR 13-2p at the time he made his decision and because Sutton is entitled to benefits under either standard, the Court relies on the lower review standard.

explanation for his assessment; the opinion was contrary to treatment notes that the claimant was "calm, stable, doing well, and had no negative thoughts when abstaining from substances and taking prescribed medications"; and the opinion was contrary to mental exams when Sutton abstained from substances. (*Id.*) The ALJ concluded that Dr. Guzman's opinion was based on Sutton's condition when using drugs and did not reflect his condition without the substance use disorders. (*Id.*)

The Court reviews each of the ALJ's findings regarding Dr. Guzman's opinion to see if there are specific, legitimate reasons to reject it, with substantial evidence supporting those reasons. First, the ALJ's finding that Dr. Guzman's opinion was brief, conclusory, not supported by the clinical findings, or without explanation is not supported by the record. Dr. Guzman included a brief explanatory note on his assessment, emphasizing the severity of Sutton's symptoms and medications. (AR 835.)

More importantly, Dr. Guzman's treatment records provide support for his opinion. *See Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218, *14 (9th Cir. July 14, 2014) (finding an opinion expressed in a check-box form entitled to weight when it is supported by numerous treating records and significant experience with the claimant). Dr. Guzman began seeing Sutton in January 2011, and continued treating him throughout that year. (AR 838.) At that time, Sutton reported having been clean since July 2010 (AR 838), and there is no evidence to the contrary in the record. Sutton reported excessive anxiety, fear and more lows than highs. (*Id.*) Dr. Guzman reported Sutton's mood as depressed and paranoid, thought content to be delusional and paranoid, concentration was

poor, memory not intact. (AR 839.) The doctor noted auditory hallucinations, comprised of multiple voices. (*Id.*) He concluded Sutton's condition had worsened. (AR 839.) On February 11, Dr. Guzman noted improvement, with paranoid thinking less intense, no hallucinations but still delusional. (AR 842-43.) At his next appointment on March 25, Dr. Guzman noted improvement and that Sutton was "much more stable considering severity and chronicity of psychiatric illness." (AR 847.) Sutton was experiencing auditory hallucinations but they were less frequent and less intense. (AR 847.)

After going off his medication and being hospitalized for feeling suicidal in April (AR 809, 828), Dr. Guzman found Sutton paranoid and anxious, and he was experiencing auditory hallucinations including some of a command type. (AR 850-51.) In June, Sutton reported anxiety and insomnia, and Dr. Guzman noted a paranoid mood. (AR 854-55.) He documented auditory hallucinations and indicated Sutton's condition had worsened. (AR 855.) In August, 2011, Sutton reported feeling stable with a decrease in frequency and intensity of hallucinations but noted they were more pronounced in the week prior to his Haldol shot. (AR 858-59.) Sutton reported feeling stable on September 1, but mood was depressed and he continued with mild hallucinations. (AR 1054-55.) As evidenced by these records, Sutton continued with paranoid mood and auditory hallucinations at all times, to varying degrees, regardless of medication compliance. During the entirety of this period, Dr. Guzman recorded Sutton as not abusing substances and other records support this conclusion.

Defendant asserts, with respect to credibility, that there is a factual dispute regarding when Sutton was using substances. The Court finds it relevant to resolve this argument in relation to Dr. Guzman's opinion. Contrary to Defendant's argument, the record provides reasonable clarity on when Sutton used methamphetamine. The record indicates that Sutton stopped using on a regular basis in July 2010.[4] (AR 609, 838, 846, 850, 854, 874.) There is one reference in an April 2011 hospitalization record that Sutton reported using methamphetamine four days prior to his admission. (AR 830.) The Court assumes this self-report to be accurate although in other reports thereafter, he reported not having used in the prior year. (AR 850, 854, 874.) There is reference in that April record to "20 year use on and off about once a month." (*Id.*) The Court reads that as a reference to his historical use, not a refutation of the other records that indicate he was not using for most of the prior year. There is no question that, beginning in September 2011, Sutton relapsed and used drugs until he was hospitalized in November for a suicide attempt. (AR 882-83, 1018.) As of November 18, 2011, he had been clean for two weeks. (AR 894.) As stated above, the records confirm that, with the possible exception of once in April 2011, Sutton did not use substances from June 2010 to September 2011.

Second, the ALJ's statement that Dr. Guzman's opinion was contrary to treatment notes is also incorrect. The ALJ cited several client progress notes from Sutton's mental

---

[4] At the hearing, Sutton initially testified that he could not recall the last time he used drugs, he then said he had not used methamphetamine since "maybe 2008 or 2009." (AR 40-41.) Review of the record in entirety reveals he is a poor historian because this claim is refuted by other documents. However, Sutton also testified that he stopped using when he moved to Yuma (AR 41), which was in July 2010; this date is corroborated by other evidence. Notwithstanding this apparent inconsistency, the record shows Sutton had stopped using drugs prior to the January 2011 SSI application.

health provider to support his statement that Sutton was "calm, stable, doing well, and had no negative thoughts when he abstained from substance use." (AR 639, 642, 644, 646, 648-50, 652.) As an initial matter, these records are for only a two-week period. Thus, they could not provide a holistic perspective on Sutton's mental health. More critically, these are not treatment notes. Two document messages left for Sutton (AR 639, 642); four document transporting Sutton (AR 646, 648-50); one is a nurses entry documenting Sutton's Haldol shot (AR 644); and one documents a telephone call from Sutton, who was anxious because his ride had not yet arrived (AR 652). The nurse's entry of January 12, 2011, while giving Sutton his Haldol shot, noted that his mood was stable and that he reported doing well. (AR 644.) The other records provide no reflection of Sutton's mental health. Other than the singular note from the nurse, the documents do not include any support for the finding that Sutton was doing well when he was not using drugs. The ALJ misinterpreted the documents, which included an objective (not a result) of Sutton's treatment at that time, which was "Objective 1: feels stable, without negative thoughts, calm." (AR 639, 642, 648, 649, 652.) In sum, Dr. Guzman's assessment was consistent with his treatment notes, not contrary to them as claimed by the ALJ.

Third, the ALJ cites one record from Dr. Guzman in support of his finding that the doctor's opinion was contrary to mental status exams. On November 18, 2011, Dr. Guzman recorded that Sutton had normal or adequate alertness, eye contact, motor activity, affect, associations, insight and judgment. (AR 24.) That same day he recorded that Sutton's mood was depressed, and his thought content was delusional and paranoid.

(AR 895.) Further, he was experiencing command type auditory hallucinations and paranoid delusions. (AR 894.) The ALJ notes that this mental status exam took place when Sutton was abstaining from drug use. (AR 24.) Sutton was also abstaining from drug use during the appointments documented in the records cited above from January to September 2011, which reveal ongoing auditory hallucinations, depression, anxiety and paranoia. Further, it is error for the ALJ to focus on very limited records indicating Sutton was doing well on a particular day or had certain normal functions. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that improvement for a person suffering from anxiety and depression "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Garrison*, 2014 WL 3397218, at *18 (finding ALJ erred by focusing on periods of improvement in mental health without considering the claimant's symptoms and well-being over an extended period).

Finally, the ALJ concluded that Dr. Guzman's opinion should not be given any weight because it was based solely on Sutton's limitations with active substance use. This is also unsupported by the record. Instead, the records document that Sutton abstained from the use of substances from June 2010 until September 2011, *see supra* pp. 10-11 and note 4, which includes nine months during which Dr. Guzman was treating Sutton. Dr. Guzman provided his opinion of Sutton's RFC in June 2011, after six months of treating Sutton while he was sober. Further, he provided a supplemental opinion (a year later, in June 2012, after further experience with Sutton) that Sutton would have the same

limitations when abstaining from drugs and alcohol. (AR 1523.) Defendant argues that it is unclear if Dr. Guzman was aware of Sutton's intermittent drug use. Dr. Guzman's records acknowledge Sutton's history of drug use, with sobriety beginning in July 2011 (AR 631, 842, 846, 850, 854, 858) and he documented Sutton's use from September to November 2011 (AR 890, 894). During the period that Dr. Guzman was treating Sutton there is no other documented drug use, other than one occasion in April 2011.

In sum, the ALJ failed to provide specific, legitimate reasons for rejecting the opinion of Dr. Guzman. Further, the rejection was not supported by substantial evidence.

**Remand**

The Ninth Circuit has held that a district court should credit as true medical opinion evidence that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004); *Garrison*, 2014 WL 3397218, \*22 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit recently clarified that application of the credit as true is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 2014 WL 3397218, at \*21.

All of the requirements of the rule are satisfied in Sutton's case. The ALJ's rejection of the opinion of Dr. Guzman – that Sutton had numerous marked and extreme limitations when not abusing substances – was not supported by specific, legitimate

- 14 -

reasons or substantial evidence. There are no outstanding issues that require resolution before the question of disability can be resolved. Crediting the doctor's opinion as true, it is clear the ALJ would be required to find Sutton disabled at Step Three. The outcome of this third prong is evident based on the analysis conducted by the ALJ. In his initial analysis, considering Sutton's limitations with the substance use disorder and fully crediting Dr. Guzman's opinion, he found that Sutton met two listings and was disabled at Step Three. The Court now finds that Dr. Guzman's opinion should be fully credited as true when considering Sutton's limitations without substance abuse. Thus, giving the doctor's opinion the same credit regarding Sutton's abilities with and without substance use, the ALJ would necessarily find Sutton disabled at Step Three. This satisfies Plaintiff's burden to demonstrate that his drug use was not material and he is disabled. Contrary to Defendant's argument there is not a substantive factual conflict regarding the timing of Sutton's drug use or his functioning in the absence of substances.

Because the Court finds Sutton entitled to an award of benefits based on the ALJ's error in his treatment of Dr. Guzman's opinion, it does not consider Sutton's other claims. Even if the ALJ properly discounted Sutton's credibility it would not impact the analysis of Dr. Guzman's opinion because the ALJ did not link the two. Dr. Guzman's opinion was not discredited for reliance on Sutton's self-reporting or credibility.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review, enter an order denying Defendant's motion to remand for

further proceedings (Doc. 17) and granting Sutton's request to remand for the award of benefits.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: CV 13-1064-TUC-JAS.

Dated this 8th day of August, 2014.

D. Thomas Ferraro
United States Magistrate Judge